# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>    600 Pennsylvania Ave. NW<br>    Washington, D.C. 20580<br><br>                        Plaintiff,<br><br>            v.<br><br>CEPHALON, INC.,<br>    41 Moores Road<br>    Frazer, Pennsylvania 19355<br><br>                        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **Civil Action No. 08-cv-00244 (RMC)** |

## DEFENDANT CEPHALON, INC.'S MOTION TO TRANSFER

Defendant Cephalon, Inc., by undersigned counsel, respectfully moves the Court, pursuant to 28 U.S.C. § 1404(a), for an Order transferring this action to the Eastern District of Pennsylvania. Defendant's counsel and counsel for the plaintiff have conferred pursuant to LCvR 7(m), and were unable to reach agreement over the relief sought. In support of this Motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities as well as the Affidavit of Randall J. Zakreski, Esq., Associate General Counsel of Cephalon, Inc. A proposed order also is attached.

Respectfully submitted,

 /s/ Andrew J. Ewalt

_____
Andrew J. Ewalt (DC Bar # 493433)
Eric Mahr (DC Bar # 459350)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000
(202) 663-6363 fax

James C. Burling
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000
(617) 526-5000 fax

Attorneys for CEPHALON, INC.

Dated:  February 20, 2008

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>  600 Pennsylvania Ave. NW<br>  Washington, D.C. 20580 | )<br>)<br>)<br>) |
| | ) |
|                           Plaintiff, | ) |
| | ) |
|              v. | )          **Civil Action No. 08-cv-00244 (RMC)** |
| | ) |
| CEPHALON, INC.,<br>  41 Moores Road<br>  Frazer, Pennsylvania 19355 | )<br>)<br>)<br>) |
| | ) |
|                           Defendant. | ) |

---

**DEFENDANT CEPHALON, INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER**

The Complaint by the Federal Trade Commission ("FTC" or "Commission") is the latest of multiple antitrust challenges to Hatch-Waxman patent litigation settlements between defendant Cephalon, Inc. ("Cephalon") and each of four generic drug manufacturers. The settlements, which resolved litigation brought by Cephalon to enforce its patent on its wakefulness drug Provigil®, permitted the generics to enter the market three years before expiration of the patent. Consolidated class actions by direct and indirect purchasers of Provigil®, as well as an action by a putative competitor – all of which raise substantially the same antitrust issues as this case – are already pending in the Eastern District of Pennsylvania where Cephalon and numerous fact witnesses reside. Motions to dismiss, based among other things on recent Second and Eleventh Circuit authority broadly upholding Hatch-Waxman settlements, are fully briefed and pending before that court.

Instead of suing in the Eastern District of Pennsylvania, the Commission filed in a forum that has no connection to the case except the location of government lawyers.  The decision to sue here is purely opportunistic.  It is designed to advance the stated goal of achieving Supreme Court review of the Commission's position on so-called "reverse payments" in Hatch-Waxman settlements that has eluded the FTC since it was reversed by the Eleventh Circuit in 2005.[1]  By maximizing the number of jurisdictions considering the issue, the FTC hopes to create a circuit conflict that will convince the Supreme Court to grant review.  That strategy, however, unfairly exposes Cephalon not only to litigation inefficiencies and inconvenience, but also to the unfair risk of conflicting judgments concerning the same conduct.

For these and other reasons set out below, this case should be transferred to the Eastern District of Pennsylvania.

## FACTUAL BACKGROUND

I.    <u>Cephalon</u>

Cephalon is a Delaware corporation with its principal place of business in Frazer, Pennsylvania.  (Affidavit of Randall J. Zakreski, Esq. ("Zakreski Aff.") at ¶ 5.)  Cephalon was founded in 1987 as an integrated biopharmaceutical company.  (<u>Id</u>. at ¶ 2.)  Today, Cephalon manufactures and/or markets more than twenty pharmaceutical products, including Provigil®, Actiq®, Vivitrol®, and Fentora®.  (<u>Id</u>.)  Many of Cephalon's 2,000 employees in the United States and nearly all of its management team are located within the Eastern District of Pennsylvania.  (<u>Id</u>. at ¶ 3.)

---

[1]    In FTC parlance, a "reverse payment" settlement is one where consideration flows from the patentee to the generic in exchange for an agreement not to enter the market until some later date.  The FTC also has described "reverse payments" as "exclusion payments" or "payments for delay."  Cephalon vigorously denies that there was any such payment to the generics in the settlements here.  Rather, the Cephalon payments referenced in the Complaint were fair consideration in business transactions such as supply agreements, IP licenses, and development projects.

II.     **The '516 Patent**

Cephalon owns U.S. Patent No. RE37,516 (the "'516 patent").  The '516 patent is a particle size composition patent for modafinil (the active ingredient in Provigil®), which covers Provigil®, and expires on October 6, 2014 (with pediatric exclusivity effectively extending the patent life to April 6, 2015).

III.    **Provigil®**

In December 1998, the FDA approved Cephalon's New Drug Application ("NDA") for its wakefulness drug Provigil®.  (Zakreski Aff. at ¶ 6.)  Cephalon began marketing Provigil® shortly after it obtained FDA approval.  (Id.)  At or about the same time that it issued, Cephalon identified the '516 Patent to the FDA for listing in the Orange Book for Provigil®.  (Id. at ¶ 7.)

IV.     **The Underlying Infringement Litigation And The Settlements**

On December 24, 2002, four generic pharmaceutical companies applied for approval to sell generic modafinil: Teva Pharmaceuticals USA, Inc. ("Teva"), Mylan Pharmaceuticals, Inc. ("Mylan"), Barr Laboratories, Inc ("Barr"), and Ranbaxy Laboratories Limited ("Ranbaxy") (collectively, the "Generics").  Cephalon brought a single patent infringement suit against the Generics on March 28, 2003, in the District of New Jersey.  Cephalon, Inc. v. Mylan Pharmaceuticals, et al., Civil Docket No. 2:03-cv-01395-JCL-MF (D.N.J., Lifland, J.).

Between December 8, 2005, and February 1, 2006, after more than two-and-a-half years of vigorous litigation, Cephalon reached separate settlements with each of the Generics (the "Settlements").  Each of the Settlements allows the generic company to enter the market in 2012, three years earlier than the expiration of Cephalon's patent (as effectively extended by its FDA pediatric exclusivity).  (Zakreski Aff. at ¶ 9.)

## V.     The Eastern District Of Pennsylvania Actions

Between April 27, 2006 and August 4, 2006, ten class action lawsuits were filed against Cephalon in the Eastern District of Pennsylvania by putative classes of direct and indirect purchasers of Provigil®.[2]  One individual indirect purchaser plaintiff sued Cephalon on September 12, 2007.  Avmed, Inc. v. Cephalon, Inc. et al., Case No. 07-cv-3450.  In addition, a putative competitor, Apotex, Inc. ("Apotex"), sued on June 26, 2006.[3]  All these actions challenged the Settlements on the ground that they were unlawful under the antitrust laws, and asserted monopolization claims (as well as claims under Section 1 of the Sherman Act) against Cephalon.[4]  On August 8, 2006, the various direct purchaser class actions were consolidated; on the same day, the various end-payor class actions were also consolidated.  (See e.g. Case Management Order No. 1, In re Modafinil Antitrust Litig., Case No. 06-cv-1797-RBS (Docket No. 16, August 8, 2006.))  All the Eastern District of Pennsylvania actions have been coordinated for discovery purposes.  (See, e.g. Case Management Order No. 2 (March 6, 2007), Apotex, Case No. 2:06-cv-02768-RBS; Case Management Order No. 2 (Docket No. 84, March 6, 2007), In re Modafinil, Case No. 06-cv-1797-RBS.)  Cepahlon moved to dismiss each of the Eastern District of Pennsylvania actions on the basis of, inter alia, Second and Eleventh Circuit authority broadly upholding the right of a patent holder to settle Hatch-Waxman infringement

---

[2]     King Drug, Inc. et al. v. Cephalon, Inc. et al., Case No. 2:2006-cv-01797; Vista Healthplan, Inc. v. Cephalon, Inc. et al., Case No. 2:2006-cv-01833; Rochester Drug Co-Operative, Inc. v. Cephalon, Inc. et al., Case No. 2:2006-cv-01868; Meijer, Inc. et al. v. Cephalon, Inc. et al., Case No. 2:2006-cv-01868; Pennsylvania Turnpike Commission v. Cephalon, Inc. et al., Case No. 2:2006-cv-02020; Burlington Drug Company, Inc. v. Cephalon, Inc. et al., Case No. 2:2006-cv-02052; J.M. Smith Corp. v. Cephalon, Inc. et al., Case No.2:2006-cv-02146l; Langan v. Cephalon, Inc., et al., Case No. 2:2006-cv-02570; Pennsylvania Employees Benefit Trust Fund v. Cephalon, Inc. et al., Case No. 2:2006-cv-02883; Saj Distributors, Inc. et al. v. Cephalon, Inc. et al., Case No. 2:2006-cv-03450.  All relevant pleadings are electronically available through the PACER system, but Cephalon's counsel will gladly provide copies of any or all relevant pleadings if that would be more convenient for the Court.

[3]     Apotex, Inc. v. Cephalon, Inc. et al., Case No. 2:2006-cv-02768 (E.D. Pa.).

[4]     The private plaintiffs also sued the Generics.

- 4 -

claims so long as the settlement does not exceed the scope of the patent.  See Schering-Plough Corp. et al. v. FTC, 402 F.3d 1056 (11th Cir. 2005) cert. denied, 126 S.Ct. 2929 (2006);  In re Tamoxifen Citrate Antitrust Litigation, 429 F.3d 370 (2d Cir. 2005) cert. denied, 127 S.Ct. 3001 (2007).  The motions to dismiss are fully briefed and pending resolution.

The Commission itself identifies the Eastern District of Pennsylvania actions as related cases that "involve[] common issues of fact" and "grow[] out of the same event or transaction." (Pl.'s Notice of Designation of Related Civil Cases Pending, Feb. 13, 2008.)   The Eastern District of Pennsylvania actions all challenge the same settlements involved in this action on substantially the same legal theories advanced by the Commission, chief among them that "reverse payment" Hatch-Waxman settlements are unlawful.  Compare Cmplt. at ¶ 3, 99; with Direct Purchaser Class Cmplt.[5] at ¶¶ 2, 8, 87-98, 129 (alleging that so-called "exclusion payments" amounted to monopolization and conspiracy to monopolize); End-Payor Consolidated Class Action Cmplt.[6] at ¶ 2, 8, 93-107  (to the same effect); Apotex's Cmplt. at ¶¶ 105-107[7] ("Cephalon and the Generic Defendants entered into settlement agreements whereby, in effect, Cephalon paid the Generic Defendants to maintain its monopoly on Provigil®.").  All the lawsuits also assert that the '516 patent was "weak" and, absent the Settlements, would not have prevented generic entry.  Compare Cmplt. at ¶¶ 41-45 with End-Payor Cmplt. at ¶ 83 and Apotex Cmplt. at ¶ 104.

Indeed, in opposing dismissal, plaintiffs in the Eastern District of Pennsylvania actions have relied heavily on positions taken by the Commission with respect to "reverse payment"

---

[5]    In re Modafinil, 06-cv-1797 (Docket No. 38, Oct. 9, 2006).

[6]    In re Modafinil, 06-cv-1797 (Docket No. 39, Oct. 10, 2006).

[7]    Apotex, Inc. v. Cephalon, Inc. et al., Case No. 2:06-cv-02768-RBS, 119 (Docket No. 1, June 26, 2006).

Hatch-Waxman settlements.  <u>See</u> Direct Purchaser Class Pls.' Sur-Reply to Def.'s Motion to Dismiss at 13-15 (citing FTC testimony, findings, and statistics regarding "reverse payments," and claiming that FTC "debunked" rationale of <u>Tamoxifen</u>); Corrected Opp. to Defs.' Motions to Dismiss, 12-13, 26, 29-30, 32, 34, 36-38 (Docket No. 66, Dec. 19, 2006), <u>In re Modafinil Antitrust Litigation</u>, Case No. 06-cv-1797 (E.D. Pa.) (citing and extensively quoting from the Commission's decision in <u>Schering-Plough</u>, as well as from the FTC's public remarks concerning "reverse payments"); End-Payor Pls. Opp. To Def's Motions to Dismiss, at 24-25, 30-32, 40, 46-47 (Docket No. 63, Dec. 14, 2006), <u>In re Modafinil</u>, Case No. 06-cv-1979 (E.D. Pa.) (relying on FTC's <u>amicus</u> brief in <u>Tamoxifen</u>, two separate FTC reports on "reverse payments," and Commission's decision in <u>Schering-Plough</u>).

## VI.    <u>The Instant Action</u>

The Commission has been investigating the Settlements since at least July 2006.  On February 13, 2008, despite the pendency of the concededly related Eastern District of Pennsylvania actions, it sued Cephalon in this Court, alleging that by means of the Settlements, Cephalon had monopolized the market for "modafinil-containing drugs approved by the FDA for sale in the United States, consisting of Provigil® and generic versions of Provigil®."  (Cmplt. at ¶ 95.)  The Commission seeks a permanent injunction to prevent Cephalon from "maintaining or enforcing the terms in its agreements with Teva, Ranbaxy, Mylan, and Barr that prevent those companies from marketing generic versions of Provigil® or successor products before April, 2012" and "from engaging in similar and related conduct in the future."  (<u>Id.</u> at Prayer for Relief ¶¶ 2-3.)

**ARGUMENT**

28 U.S.C. § 1404(a) states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[8] District courts have broad discretion to grant or deny parties' requests for transfer.  Rosales v. United States, 477 F. Supp. 2d 213, 215 (D.D.C. 2007) (Collyer, J.), citing In re Scott, 709 F.2d 717, 720 (D.C. Cir. 1992).  The "proper technique to be employed [in ruling on a § 1404(a) motion for transfer of venue] is a factually analytical, case-by-case determination of convenience and fairness."  FC Investment Group LC, et al. v. Lichtenstein, 441 F. Supp. 2d 3, 12 (D.D.C. 2006) (quotations omitted) (Collyer, J.);  Barham v. UBS Fin. Servs., 496 F. Supp. 2d 174, 176-77 (D.D.C. 2007).

Both convenience and fairness warrant transfer here, as set out below.

**I.    The Commission's Choice of Forum Is Entitled To Little Or No Deference**

**A.    Courts In This District Commonly Transfer Actions Brought By Federal Agencies Or The United States To More Appropriate Fora**

As an initial matter, while the Commission may prefer to litigate in the District of Columbia, it has no special right to do so.  Section 1404(a) rectified the "inherently unfair" preference previously given to the government's choice of venue.  United States v. E. I. Du Pont De Nemours & Co., 83 F. Supp. 233, 234-5 (D.D.C. 1949).  Courts in this District routinely transfer suits brought by federal agencies or the United States pursuant to § 1404(a) when another forum is more appropriate.  E.g., SEC v. Roberts, Civ. A. No. 07-407 (EGS), 2007 U.S. Dist. LEXIS 49301, at *12-13 (D.D.C. July 10, 2007) (transferring civil enforcement action to district where related charges against defendant were pending); SEC v. Ernst & Young, 775 F.

---

[8]       There can be no dispute that the FTC could have brought this suit in the Eastern District of Pennsylvania.

Supp. 411, 416 (D.D.C. 1991) (transferring civil enforcement action to district where underlying events occurred and majority of fact witnesses resided); <u>Comptroller of Currency v. Calhoun First Nat'l Bank</u>, 626 F. Supp. 137 (D.D.C. 1985) (transferring civil antitrust injunction action because only factual nexus with District of Columbia was filing of documents, and convenience of parties and witnesses was better served through coordination with cases with "same factual underpinning" pending in transferee district); <u>SEC v. Page Airways</u>, 464 F. Supp. 461, 465 (D.D.C. 1978) (transferring civil injunction action to district where underlying marketing practices occurred and where action involving some of same issues was pending); <u>Du Pont</u>, 83 F. Supp. at 234-35 (transferring civil antitrust injunction action to district where defendant, witnesses, and files were located; and finding "no reason …why this action should be brought and tried in that District of Columbia … even though technically venue may also be [brought] in the District of Columbia").

Indeed, some courts have held that the forum choice of a federal agency or the United States is entitled to *less* deference than that of private litigants.  <u>EEOC v. Area Erectors, Inc.</u>, Case No. 06-C-516-C, 2007 U.S. Dist. LEXIS 30723, at *5, 102 Fair Empl. Prac. Cas. (BNA) 576 (D. Wis. April 23, 2007) (EEOC's forum choice entitled to less deference because agency of federal government is no more a resident of one district than another); <u>United States v. Nature's Farm Products</u>, Case No. 00 Civ. 6593 (SHS), 2004 U.S. Dist. LEXIS 8485, at *19-20 (S.D.N.Y. May 3, 2004) (same as to United States); <u>U.S. ex rel. Gervae v. Payne and Doland, Inc.</u>, No. 01 Civ. 0383, 2003 WL 23185881, at *3  (W.D.Wis. July 14, 2003) (same); <u>United States v. Klearman</u>, 82 F. Supp. 2d 372, 375 (E.D. Pa. 1999) (government's choice of forum "not a choice that deserves same level of deference as does a choice by a plaintiff to bring an action in her home district").  Accordingly, the fact that the FTC chose to file suit in this District is of no

moment.

**B.    The Commission's Choice Of Forum Is Entitled To Little Or No Weight Because The Claim Lacks Any Connection To This District.**

In <u>SEC v. Roberts</u>, the court held that

> While courts usually defer to a plaintiff's choice of forum, the court will afford "substantially less deference" to that choice when the plaintiff does not reside in the chosen forum <u>or</u> when the claim lacks a substantial connection to the forum.

2007 U.S. Dist. LEXIS 49301, at *6 (emphasis added), <u>citing</u> <u>Devaughn v. Inphonic, Inc.</u>, 403 F.

Supp. 2d 68, 72 (D.D.C. 2005); <u>see also</u> <u>Rosales</u>, 477 F. Supp. 2d at 216 (transferring case

because "the District of Columbia has no meaningful nexus to the dispute, other than the fact that

it is the seat of the federal government"); <u>Beard v. Homecomings Fin. Network</u>, 2008 U.S. Dist.

LEXIS 1846, at *2 (D.D.C. Jan. 11, 2008) (to same effect); <u>Barham v. UBS Fin. Servs.</u>, 496 F.

Supp. 2d at 178 (D.D.C. 2007) (transferring case because "the plaintiff's claims lack a

substantial connection to the District of Columbia").

These authorities are directly on point because in the present case "no underlying

operative facts arose in the District of Columbia." <u>SEC v. Ernst & Young</u>, 775 F. Supp. 411, 414

(D.D.C. 1991). To the contrary, as set out in detail in Mr. Zakreski's Affidavit, the negotiation

of the Settlements took place by telephonic and e-mail communication among companies

headquartered in the Eastern District of Pennsylvania (Cephalon and Teva's U.S. subsidiary),

West Virginia (Mylan), New Jersey (Barr) New Jersey (Ranbaxy's U.S. subsidiary), Israel

(Teva) and India (Ranbaxy). The negotiation of the contemporaneous business transactions also

took place by such telephonic and e-mail communication, as well as three in person meetings in

New Jersey, Pennsylvania, and Michigan. (Zakreski Aff. at ¶ 11.) The underlying patent

litigation took place in the District of New Jersey. (<u>Id</u>. at ¶ 8.) Finally, the FTC seeks broad

injunctive relief not only against the Settlements but also against similar future conduct (Cmplt.,

Prayer for Relief, ¶¶ 2-3), the effect of which would occur principally in the Eastern District of Pennsylvania where Cephalon is headquartered. In short, there is no connection between the underlying facts and this forum, and the FTC's choice to bring suit here therefore carries no weight.

## II.    Transfer To The Eastern District Of Pennsylvania Is Appropriate Because Three Actions Raising Substantially The Same Antitrust Issues Already Are Pending There

The Supreme Court has noted that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." Continental Grain Co. v. The FBL – 585, 364 U.S. 19, 26 (1960). Courts in this District have not hesitated to transfer cases to fora where cases raising the same issues were pending. Holland v. A.T. Massey Coal, 360 F. Supp. 2d 72, 77 (D.D.C. 2004) (holding that "the fact that there is an ongoing case dealing with similar issues in another jurisdiction weighs very heavily in favor" of transfer); California Farm Bureau Fed'n v. Badgley, Civil Action No. 02-2328 (RCL), 2005 U.S. Dist. LEXIS 12861, at *5, 7 (D.D.C. June 29, 2005) (transferring case to California because of "nearly identical litigation" pending there); Weinberger v. Tucker, 391 F. Supp. 2d 241, 245 (D.D.C. 2005) ("the interest of justice factor encompasses the desire to avoid multiple litigation from a single transaction [and] to try related litigation together . . .") (internal quotations omitted); Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 55 (D.D.C. 2000) ("interest of justice" factor includes whether another court is more familiar with the parties and the issues) (citing Oil, Chemical & Atomic Workers Local Union v. NLRB, 694 F.2d 1289, 1300 (D.C. Cir. 1982)); Upjohn Co. v. General Accident Ins. Co., 581 F. Supp. 432, 435 (D.D.C. 1984) ("Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pretrial proceedings and discovery and avoids duplicitous litigation and

inconsistent results."); <u>SEC v. Telco Marketing Services, Inc.</u>, 1980 U.S. Dist. LEXIS 11323

(D.D.C. 1980) (transferring case where private suit concerning same transactions was already

pending in transferee district);  <u>see</u> <u>also</u> <u>Impra, Inc. v. Quinton Instruments Co.</u>, No. CIV 90-

0383 PHX WPC, 17 U.S.P.Q.2D (BNA) 1890, 1990 U.S. Dist. LEXIS 18724, at *6 (D. Ariz.

June 26, 1990) ("As a general rule, cases should be transferred to districts where related actions

are pending").

These authorities and principles mandate transfer.  The Commission itself identifies the

Eastern District of Pennsylvania actions as related cases that "involve[] common issues of fact"

and "grow[] out of the same event or transaction."  (Pl.'s Notice of Designation of Related Civil

Cases Pending, Feb. 13, 2008.)  As explained above, this case and the Pennsylvania actions all

challenge the same settlement, on substantially the same legal theories, chief among them that

"reverse payment" Hatch-Waxman settlements are unlawful.  <u>See</u> <u>supra</u> at 3-5. The substantial

identity of the issues also means that the same witnesses and documents will be the subject of

discovery in all the actions.  Accordingly, irrespective of the extent to which consolidation or

coordination might be appropriate (a question that can be decided at a later date by the Eastern

District of Pennsylvania court), judicial economy clearly is promoted by transfer to a court

already familiar with the issues.[9]

---

[9]    The FTC may seek to invoke, by analogy, 28 U.S.C. § 1407(g), which provides that suits by the
"United States" enforcing the antitrust laws are not subject to multidistrict litigation. <u>See</u> <u>United States v.
Dentsply, Inc.</u>, 190 F.R.D. 140, 144-46 (D. Del. 1999) (citing statute in declining to consolidate
government enforcement action with private suit).  The statute has no relevance, even by analogy, to the
issue to be decided on a motion to transfer, namely whether another forum is more appropriate under the
criteria outlined herein.  Any question concerning consolidation or the extent of coordination among the
actions can (and should) be addressed by the Eastern District of Pennsylvania court after transfer.

**III.    Transfer Is Particularly Appropriate Because The Commission Is Creating Duplicative Litigation And The Risk of Inconsistent Judgments**

Given the substantial identity of the issues, transfer of this action is also appropriate to avoid the risk of inconsistent judgments as to the validity of the settlement agreements.  Reiffin v. Microsoft Corp., 104 F. Supp. 2d at 55 n.15 (in patent, antitrust and defamation action, holding that "[l]itigation of related claims in the same tribunal is favored in order to avoid duplicative litigation, attendant unnecessary expense, loss of time to courts, witnesses and litigants, and inconsistent results") (quotations omitted); Barham v. UBS Fin. Servs., 496 F. Supp. 2d at 180 (transferring case "where pending action raised quite similar claims so as [to] avoid inconsistent findings and … provide for a single, coherent, consistent judgment.") (internal quotations omitted); California Farm Bureau,  2005 U.S. Dist. LEXIS 12861, at *7 ("[T]here would be a significant risk that this court and the California court would issue inconsistent orders subjecting [the defendant] to inconsistent obligations.  Such considerations weigh heavily in favor of transfer.")  It would be highly unfair to force Cephalon to prevail twice on the same issues in order to vindicate its right to settle disputed patent claims.

This is especially true where the FTC is creating duplicative litigation to further its own agenda.  As the United States pointed out in its amicus curiae brief opposing the FTC's petition for writ of certiorari in Schering-Plough, there is no split among the circuit courts of appeals regarding the legality of "reverse payment" Hatch-Waxman settlements.  See Br. for the United States as Amicus Curiae, Schering-Plough, No. 05-273 at 16-20 (May 2006), available at 2006 WL 1647529.  Commissioner Leibowitz has candidly acknowledged the FTC's strategy to attempt to create such a split in the hopes of persuading the Supreme Court to accept review, commenting that it was "a matter of public knowledge that we're looking to bring a case that will create a clearer split in the circuits."  See Oral Statement of Commissioner Jon Leibowitz,

Hearing of the Senate Judiciary Committee (January 17, 2007) at 3, <u>available</u> <u>at</u>

http://www.ftc.gov/speeches/leibowitz/ 071701oralstatement.pdf.  Indeed, in an April 2006

speech, nearly two years before the Commission decided to bring suit against Cephalon,

Commissioner Leibowitz identified the District of Columbia Circuit as one of his three choice

jurisdictions in which to seek that split.  <u>See Exclusion Payments to Settle Pharmaceutical Patent</u>

<u>Cases: They're B-a-a-a-ck!</u> (April 24, 2006) at 8, <u>available</u> <u>at</u>

http://www.ftc.gov/speeches/leibowitz/060424PharmaSpeechACI.pdf.

To date, the FTC's effort to obtain Supreme Court review has been unsuccessful, as the

Supreme Court denied the Commission's petition for writ of <u>certiorari</u> in <u>Schering-Plough</u>, 126

S.Ct. 2929 (2006), and denied the plaintiffs' petition in <u>Tamoxifen</u>, 127 S.Ct. 3001 (2007).[10]

Both times, the United States urged the Court to deny <u>certiorari</u>.[11]  Given its lack of success to

date, there can be little doubt that the FTC filed in this District rather than the Eastern District of

Pennsylvania in order to maximize the number of courts of appeals that might issue a ruling at

odds with <u>Schering-Plough</u> and <u>Tamoxifen</u>.  The Commission is trying to get as many bites at

the judicial apple as possible, at the expense of judicial economy and fundamental fairness.  This

Court should not condone these transparent litigation tactics.

---

[10]    Although the FTC did not file an <u>amicus</u> brief to the Supreme Court in <u>Tamoxifen</u>, it did file a brief in support of the plaintiffs' petition for panel rehearing and rehearing <u>en</u> <u>banc</u> before the Eleventh Circuit. See Br of <u>Amicus</u> <u>Curiae</u> Federal Trade Commission In Support of Plaintiffs-Appellants Petition for Panel Rehearing and Rehearing <u>En</u> <u>Banc</u>, <u>In re Tamoxifen Citrate Antitrust Litig.</u>, No. 03-7641 (11th. Cir. Nov. 30, 2005), *available at* 2005 WL 3332374.

[11]    <u>See</u> Br. for United States as <u>Amicus</u> <u>Curiae</u> at 16-20, <u>Schering-Plough</u>, No. 05-273 (May 1, 2006), *available at* 2006 WL 1647529; Br. for United States as <u>Amicus</u> <u>Curiae</u> at 16-20, <u>Tamoxifen</u>, No. 06-830 (May 2007), *available at* 2007 WL 1511527.

**IV.    Litigating In The Eastern District Of Pennsylvania Would Be More Convenient For Cephalon And The Witnesses**

Finally, the convenience of the parties and witnesses also clearly favors transfer.  As noted above, the only reason this forum is convenient to the FTC is that its lawyers are located here.  That factor is worthy of no deference.  SEC v. Roberts, 2007 U.S. Dist. LEXIS 49301, at *8 (declining to defer to agency's forum choice based on "minor litigational inconveniences seemingly present in any enforcement action brought in a city other than the one where the agency is located"); McClamrock v. Eli Lilly and Co., 267 F. Supp. 2d 33, 40 (D.D.C. 2003). The location of material fact witness deserves far more consideration. See SEC v. Roberts, 2007 U.S. Dist. LEXIS 49301, at *10-11.  Cephalon's corporate headquarters, as well as its principal research and development facilities, are located within the Eastern District of Pennsylvania. (Zakreski Aff. at ¶ 4.)  Not surprisingly, then, most of the fact witnesses, who have knowledge concerning the '516 patent and the composition of Provigil®; and/or who were involved in the negotiations referenced above, are residents of the Eastern District of Pennsylvania.  (Id. at ¶ 12-15.)  These witnesses include: the principal Cephalon settlement negotiators; individuals intimately familiar with the Company's supply chain needs and history (relevant to the Company's supply purchases from certain of the Generics, see Cmplt. ¶¶ 62, 66, and 74); and two of its top scientists (one of whom was a named inventor on the '516 patent; the other of whom is intimately familiar with scientific issues relating to a significant intellectual property license with one of the Generics, see Cmplt. at ¶ 61).  (Zakreski Aff. at ¶ 13.)  Indeed, not one of Cephalon's likely fact witnesses resides in the District of Columbia. (Id. at ¶ 13-14.)  Moreover, none of the Generics, whose employees may also be called to testify, is either incorporated in or has its principal place of business in the District of Columbia.  (Id. at ¶ 15.)

- 14 -

In short, the location of witnesses – as with every other relevant factor – overwhelmingly favors the Eastern District of Pennsylvania as the proper forum for this case.

## CONCLUSION

For the reasons set forth herein, this Court should transfer this action to the Eastern District of Pennsylvania.

Respectfully, submitted,


/s/ Andrew J. Ewalt
_____
Andrew J. Ewalt (DC Bar # 493433)
Eric Mahr (DC Bar # 459350)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000
(202) 663-6363 fax

James C. Burling
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000
(617) 526-5000 fax

Attorneys for CEPHALON, INC.

Dated:  February 20, 2008

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION,<br>600 Pennsylvania Ave. NW<br>Washington, D.C. 20580 | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Civil Action No. 08-cv-00244 (RMC)** |
| CEPHALON, INC.,<br>41 Moores Road<br>Frazer, Pennsylvania 19355 | ) ) ) ) | |
| Defendant. | ) ) | |

## AFFIDAVIT OF RANDALL J. ZAKRESKI, ESQ.

I, Randall J. Zakreski, Esq., depose and say:

1.      I am an attorney, a member of the bar of the Commonwealth of Pennsylvania, and an employee of Defendant Cephalon, Inc. ("Cephalon").  I joined Cephalon in November 2003 as Assistant General Counsel.  In 2004, I was promoted to Associate General Counsel and serve in that position today.  I currently reside in Downingtown, Pennsylvania.  I submit this affidavit upon personal knowledge or information and belief, including inquiry of relevant Cephalon employees, in support of Cephalon's motion to transfer this case to the United States District Court for the Eastern District of Pennsylvania.

### Cephalon

2.      Cephalon is an international biopharmaceutical company founded in 1987.  It is dedicated to the discovery, development, and marketing of innovative drug products to treat human diseases.  Cephalon's core therapeutic areas are: central nervous system disorders, pain,

1

cancer, and addiction.  Today, Cephalon manufactures and/or markets over twenty (20)

pharmaceutical products worldwide, including Provigil®, Actiq®, Vivitrol®, and Fentora®.

     3.     Cephalon employs approximately 2,000 people in the United States.  Many of

those employees, including most of the Company's senior management, work and/or reside

within the Eastern District of Pennsylvania.  None of the Company's senior management reside

within the District of Columbia.

     4.     Cephalon has its principal place of business – its corporate headquarters – at 41

Moores Road, Frazer, Pennsylvania.  The Company also has offices in Pennsylvania at 383

Phoenixville Pike, Malvern, Pennsylvania as well as at 905 Airport Road and 145 Brandywine

Parkway (its primary Research and Development facility), West Chester, Pennsylvania.  All four

of these locations are within the Eastern District of Pennsylvania.  Cephalon does have an office

in Washington, DC, which includes four (4) employees from its Government Affairs and Public

Policy group.

### The Operative Facts Underlying the FTC's Complaint

     5.     I have reviewed the Complaint filed by the FTC.    I understand that the FTC

alleges that agreements settling a patent infringement suit relating to Cephalon's wakefulness

promoting drug, Provigil®, violate Section 5 of the Federal Trade Commission Act, 15 U.S.C. §

45(a) (2000).  *See* Complaint, Docket No. 1, ¶¶ 97-100.

     6.     In December 1998, the FDA approved Cephalon's New Drug Application

("NDA") for Provigil®.  Cephalon began marketing Provigil® shortly after it obtained FDA

approval.

     7.     Cephalon owns U.S. Patent No. RE37,516 (the "'516 patent").  The '516 patent is

a particle size pharmaceutical composition patent for modafinil (the active ingredient in

Provigil®).  It covers Provigil®, and expires on October 6, 2014, with pediatric exclusivity effectively extending the patent life to April 6, 2015.  Upon issuance, Cephalon listed the '516 patent in the Orange Book as covering Provigil®.

8.     On December 24, 2002, four generic pharmaceutical companies applied to the FDA for approval to sell generic modafinil.  Those four companies were: Teva Pharmaceuticals USA, Inc. ("Teva"), Mylan Pharmaceuticals, Inc. ("Mylan"), Barr Laboratories, Inc. ("Barr"), and Ranbaxy Laboratories Limited ("Ranbaxy") (collectively, the "Generics").  Cephalon brought a single patent infringement suit against those companies in the District of New Jersey on March 28, 2003.

9.     Between December 8, 2005 and February 1, 2006, after more than two-and-a-half years of vigorous litigation, Cephalon reached separate settlements with each of the Generics (the "Settlements").  Among other things, each of the Settlements grants each of the Generics a license to enter the market in 2012, three years earlier than the expiration of Cephalon's patent (as effectively extended by its FDA pediatric exclusivity).

10.    John E. Osborn, the Company's General Counsel, and I were Cephalon's principal negotiators for the Settlements.  The majority of the negotiations took place by telephone and e-mail while Mr. Osborn and I were at the Company's headquarters in Frazer, Pennsylvania.  To the best of my knowledge, information and belief, We had no in-person meetings with any representatives of the Generics in which we negotiated the Settlements.

11.    Contemporaneous with the Settlements, Cephalon also entered into certain other business transactions with the Generics and other entities.  *See* Complaint ¶¶ 56, 61-62, 66-67, 70, and 73-75.  In addition to Mr. Osborn and occasionally me, Peter Grebow, the Company's Executive Vice President of Worldwide Technical Operations, Natalie Barndt, the Company's

then-Director of Worldwide Business Development, and others participated in some of those

negotiations.  The majority of those negotiations also took place by telephone and e-mail while

Mr. Osborn, Dr. Grebow, Ms. Barndt, and I and others were at the Company's headquarters in

Frazer, Pennsylvania.   Based upon my knowledge, information, and belief, there were only three

in-person negotiations regarding these agreements, none of which took place in the District of

Columbia.  One was a meeting in Newark, New Jersey with representatives from a company

called Chemagis, Ltd. and/or an affiliate of Chemagis concerning agreements referenced in ¶¶

73-75 of the Complaint (which representatives from Barr briefly attended for purposes of

introduction).  Another was a meeting with representatives of Chemagis and/or its affiliate in

Michigan concerning an agreement referenced in ¶ 75 of the Complaint.  The final was a meeting

in Pittsburgh, Pennsylvania between representatives from Cephalon and representatives from

Mylan concerning a collaboration agreement referenced in ¶ 70 of the Complaint.

## Location of Witnesses

### A. Current Cephalon Employees

12.    A number of witnesses from whom the FTC itself sought testimony during

investigational hearings are current Cephalon employees who are and were involved in the

Company's development, manufacture, and sale of pharmaceutical products, including Provigil®;

who have knowledge concerning the '516 patent and the composition of Provigil®; and/or who

were involved in the negotiations referenced above.  All these individuals reside and/or work

within the Eastern District of Pennsylvania.

13.    In addition to me, these current employees include, without limitation:

    a.    <u>Frank Baldino, Jr., Ph.D.</u> – Dr. Baldino is the Chairman and Chief
          Executive Officer of Cephalon and a member of the Company's Board of
          Directors.  He founded the Company in 1987.  Dr. Baldino heads the
          Company's management team, and is involved in strategic decisions

regarding the development and sale of Cephalon's products, including Provigil[®]. He also served on a special committee of the Board of Directors that approved each of the Settlements.

b. <u>John E. Osborn, Esq.</u> – Mr. Osborn is the Executive Vice President, General Counsel and Secretary of Cephalon. He joined the Company in 1997 and was promoted to General Counsel in 1998. Mr. Osborn was a principal negotiator of the Settlements. Mr. Osborn has decided to resign his position with the Company, effective March 31, 2008, but has agreed to remain an advisor to Cephalon on legal and policy matters until 2011.

c. <u>Peter E. Grebow, Ph.D.</u> – Dr. Grebow is the Executive Vice President of Worldwide Technical Operations, and served in that capacity at the time of the Settlements. Prior to that, Dr. Grebow served in various senior management positions including Senior Vice President, Worldwide Technical Operations, and senior Vice President, Business Development. Previously, Dr. Grebow managed Cephalon's drug development operations. He joined the Company in January 1991. Dr. Grebow manages the worldwide manufacturing of Cephalon's products, including Provigil[®]. He also oversees the sourcing of active pharmaceutical ingredients ("APIs") and the development of manufacturing processes, among other things. He is also one of the named inventors of the '516 patent.[1]

d. <u>Robert T. Hrubiec, Ph.D., J.D.</u> – Dr. Hrubiec is Cephalon's Vice President of Intellectual Property. Dr. Hrubiec joined the Company in 1999. Prior to his appointment as Vice President, Dr. Hrubiec served as the Company's Director of Intellectual Property and later as its Senior Director of Intellectual Property. Among other things, Dr. Hrubiec oversees, directs and manages Cephalon's intellectual property portfolio and provides legal advice to the Company on matters relating to intellectual property. In that capacity, Dr. Hrubiec provided assistance to individuals who negotiated certain intellectual property licenses and assignments with the Generics and other entities in late 2005 and early 2006, which are referenced in ¶¶ 61, 67, 73, and 75 of the Complaint.

e. <u>John P. Mallamo, Ph.D.</u> – Dr. Mallamo is the Vice President of Worldwide Chemical Research and Development for Cephalon. He joined the Company in 1994 and, prior to assuming his current role, served as Director of Chemical Research, Senior Director of Medicinal Chemistry, and Vice President of Drug Discovery and Chemical Development. Dr. Mallamo is knowledgeable about some of the scientific issues underlying the Teva intellectual property license referenced in ¶ 61 of the Complaint.

---

[1] Dr. Grebow has a residence both in New Jersey and in Pennsylvania (within the Eastern District of Pennsylvania).

f.    <u>Kenneth J. Fiorelli, Ph.D.</u> – Dr. Fiorelli is Vice President of Global Manufacturing for Cephalon. He began with the Company in December 2003 and, before assuming his current position in March 2006, served as Vice President of Global Process Development. Among other things, Dr. Fiorelli manages the Company's manufacturing operations, including manufacturing operations for modafinil. He is knowledgeable about the Company's supply needs and the reasons for entering into the supply arrangements referenced in ¶ 62, 66, and 74 of the Complaint.

### B. Former Cephalon Employees

14.    In addition, the FTC sought testimony from two former Cephalon employees:

a.    <u>Natalie K. Barndt</u> – Ms. Barndt joined Cephalon in 2003 as Director of Worldwide Business Development. She was promoted to Vice President in 2004, a position she held until her departure from the Company on or about August 17, 2007. During her tenure at Cephalon, Ms. Barndt managed the Company's business development strategy, and negotiated the development agreements referenced in ¶¶ 70 and 75 of the Complaint. Ms. Barndt remains a consultant to the Company. To the best of my knowledge, information and belief, Ms. Barndt currently resides in Seattle, Washington.

b.    <u>Todd MacLaughlan</u> – Mr. MacLaughlan, a former Cephalon Vice President and General Manager of Cephalon's subsidiary CIMA LABS Inc., began with the Company in March 2005. Mr. MacLaughlan left the Company on or about September 5, 2006. To the best of my knowledge, information and belief, he currently resides in New Jersey, approximately seventy-five (75) miles northeast of Philadelphia. Among other things, Mr. MacLaughlan was responsible for the forecasts of generic price and sales referenced in ¶ 39 of the Complaint.

### C. Generics

15.    To the extent representatives of the Generics also may be witnesses, to the best of my knowledge, none of the Generics either is incorporated in or has its principal place of business within the District of Columbia. In particular:

a.    Teva is a corporation organized under the laws of Delaware and has its principal place of business in North Wales, Pennsylvania (within the Eastern District of Pennsylvania). Its parent company, Teva Pharmaceuticals Industries, Ltd., an Israeli company, was also a party to the settlement with Teva.

b.      Ranbaxy is a corporation organized under the laws of India with its principal place of business in New Delhi, India.  Its subsidiary, Ranbaxy Pharmaceuticals, Inc., is incorporated under the laws of Delaware and has its principal place of business in Princeton, New Jersey.

c.      Mylan is a corporation organized under the laws of West Virginia, and has its principal place of business in Morgantown, West Virginia.  Mylan Laboratories, a related entity involved in the Provigil® patent litigation, is incorporated under the laws of the Pennsylvania and has its principal place of business in Canonsburg, Pennsylvania (within the Western District of Pennsylvania).

d.      Barr is a corporation organized under the laws of Delaware and has its principal place of business in Woodcliff Lake, New Jersey.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief.

/s/ Randall J. Zakreski

_____
Randall J. Zakreski, Esq.

Dated: February 20, 2008

7

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____ )
FEDERAL TRADE COMMISSION,                   )
    600 Pennsylvania Ave. NW                )
    Washington, D.C. 20580                  )
                                            )
                Plaintiff,   )
                                            )
        v.                          )    **Civil Case No. 08-cv-00244 (RMC)**
                                            )
CEPHALON, INC.,                             )
    41 Moores Rd.                           )
    Frazer, Pennsylvania 19355              )
                                            )
              Defendant.     )
_____ )

**[PROPOSED] ORDER**

    Having considered Defendant's Motion to Transfer and Memorandum of Points and

Authorities in Support thereof, as well any Opposition thereto, the Court hereby ORDERS that :

    1.    Pursuant to 28 U.S.C. § 1404, this action is transferred to the United States

District Court for the Eastern District of Pennsylvania.


SO ORDERED this _____ day of _____, 2008.



                                          _____
                                          Rosemary M. Collyer
                                          United States District Judge

Copies to:

Attorneys for Defendant                    Attorneys for Plaintiff          ___


Andrew J. Ewalt (DC Bar # 493433)          Markus H. Meier (DC Bar # 459715)
Eric Mahr (DC Bar # 459350)                Bradley S. Albert
Wilmer Cutler Pickering Hale and Dorr LLP  Philip M. Eisenstat
1875 Pennsylvania Avenue, NW               Saralisa C. Brau
Washington, DC 20006                       Mark J. Woodward (DC Bar # 479537)
(202) 663-6000                             Jeffrey C. Bank
(202) 663-6363 fax                         600 Pennsylvania Avenue, NW
                                           Washington, DC 20580
James C. Burling                           Telephone:  (202) 326-3759
Wilmer Cutler Pickering Hale and Dorr LLP  Facsimile:  (202) 326-3384
60 State Street
Boston, MA 02109
(617) 526-6000
(617) 526-5000 fax