IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>             Plaintiff,<br><br>    v.<br><br>CEPHALON, INC.,<br><br>             Defendant. | Civil Action No. 1:08-cv-00244-JDB |

**DEFENDANT CEPHALON, INC.'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO TRANSFER**

The Federal Trade Commission ("Commission" or "FTC") does not seriously contest the essential points of defendant Cephalon, Inc.'s ("Cephalon") transfer motion: that the three private antitrust cases pending in the Eastern District of Pennsylvania challenge the same agreements on the same antitrust theories and involve the same witnesses and documents as this case; that absent transfer there is a risk of inconsistent judgments and legal rulings on the antitrust consequences of the same conduct; that this case has no connection to the District of Columbia other than the location of FTC lawyers; that the Commission filed here because it hopes to maximize its chances of obtaining a circuit split and Supreme Court review of the question of the legality of so-called "reverse payment" Hatch-Waxman settlements; that the operative facts arise predominantly from events in the Eastern District of Pennsylvania; and that many key witnesses reside in the Eastern District of Pennsylvania where Cephalon is headquartered.

The Commission relies principally on a purported public policy that government antitrust enforcement actions and private antitrust cases, no matter how closely related, must proceed on

completely separate tracks. This argument, however, is based on a flawed analogy to an inapposite portion of the multidistrict litigation statute, and is undercut by the Commission's position in a similar antitrust case in this District in which it moved to coordinate discovery with direct and indirect purchaser class actions. The Commission also asserts, as if it were a foregone conclusion, that transfer inevitably would result in delay, to the detriment of the public. This professed concern not only rests on a faulty and speculative premise, but also is belied by the FTC's two-year delay between receipt of Cephalon's settlement agreements and institution of this litigation. Further, if this case is transferred, the Commission is free to raise any concerns it may have about scheduling in the Eastern District of Pennsylvania.

The FTC's other arguments opposing transfer are equally unpersuasive. The Commission misstates the deference to which its forum choice is entitled; understates the efficiencies potentially to be gained by having a single district judge oversee all challenges to Cephalon's Provigil settlements; and mischaracterizes the basis for Cephalon's motion by suggesting it depends entirely on the location of witnesses.

Cephalon respectfully submits that, as set forth in its opening brief and below, the FTC's choice of forum is entitled to no deference in the circumstances here and the relevant public and private factors all support transfer to the Eastern District of Pennsylvania.

**I.     The FTC Essentially Concedes the Principal Grounds Supporting Transfer**

The Commission ignores, or barely attempts to respond to, most of the grounds articulated by Cephalon for transferring this case.

*First*, the FTC does not refute the authorities cited by Cephalon that a plaintiff's forum choice is not entitled to deference where the forum has no relation to the operative facts of the

case. *See* Defendant's Memorandum in Support of Motion to Transfer at 9-10 and cases cited.[1]

Nor does the FTC suggest any connection between the District of Columbia and the operative facts here.[2] While the FTC states it deserves "heightened respect" in its choice of forum because this is an antitrust case (FTC's Opposition to Defendant's Motion to Transfer at 10-11),[3] there is

---

[1] *See also, e.g., The Hawksbill Sea Turtle v. FEMA*, 939 F.Supp 1, 3 (D.D.C. 1996) ("[A]lthough Plaintiff's choice of forum merits serious consideration, that factor alone is not determinative when, as here, the case has virtually no connection to the District of Columbia and other factors militate in favor of transfer."); *Southern Utah Wilderness v. Norton*, No. Civ.A. 01-2518 (CKK), 2002 LEXIS Dist. 27414, at *8 (D.D.C. June 28, 2002) (to same effect); *Islamic Republic of Iran v. The Boeing Company*, 477 F. Supp. 142, 144 (D.D.C. 1979) ("[T]he Court recognizes the diminished consideration accorded to a plaintiff's choice of forum where, as here, that forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter.").

[2] *See* FTC's Opp. at 10. In *Thayer/Patricof Educ. Funding, L.L.C., v. Pryor Res., Inc.,* many of the operative facts in the case took place in the District of Columbia. 196 F. Supp. 2d 21 (D.D.C. 2002).

[3] One case from another jurisdiction cited by the FTC, *U.S. v. Brown University,* held that the government's choice of forum in antitrust cases deserves "heightened respect." 772 F. Supp. 241, 242 (E.D. Pa. 1991). However, the rationale cited by the *Brown* court – that the Clayton Act has a liberal venue provision (*Id.*) – has no traction here. First, the same venue provision applies to private antitrust suits, which are commonly transferred from this district. *See infra* n.4. Second, courts in this district also commonly transfer suits brought by the SEC (Def.'s Mot. at 7-8), even though the Securities Exchange Act has a liberal venue provision substantially identical to that of the Clayton Act. *Compare* Securities Exchange Act, 15 U.S.C. § 78aa (2006) ("Any suit or action to enforce any liability or duty created by this title . . . may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business. . . .") *with* Clayton Act, 15 U.S.C. § 22 (2000) ("Any suit . . . under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business . . . .").

no special rule in this District for antitrust cases which commonly are transferred by courts here.[4] Accordingly, no deference is owed to the FTC's choice to bring suit in the District of Columbia.

*Second*, the FTC does not deny that allowing this case to proceed here would pose a risk of inconsistent judgments, but instead seeks to downplay the relative importance of that risk. If anything, however, the risk is magnified because in all likelihood each of the cases will be determined at least in part by legal rulings on the standards for evaluating Hatch-Waxman settlements under the antitrust laws. It would be grossly unfair to subject Cephalon to possibly inconsistent rulings from two courts on the antitrust consequences of the same settlements. This is particularly true where this case has no connection to this forum and is brought here only because the FTC – unable thus far to persuade a court of appeals to adopt its view of Hatch-Waxman settlements (*see* Def's. Mem. at 12-13) – wants to maximize the number of

---

[4] *See DeLoach v. Philip Morris Companies, Inc.*, 132 F. Supp. 2d 22, 25, 27 (D.D.C. 2000) (transferring antitrust class action where no connection to District of Columbia except location of government agency and where operative facts occurred predominantly in transferee forum); *Industria Prodotti Chimici, S. p. A. v. Eli Lilly and Co.*, Civ. Action No. 85-2632, 1985 WL 6274, at *2 (D.D.C. Nov. 23, 1985) (Jackson, J.) (transferring antitrust and patent case to district in which related case has been pending two years, where the transferee "court [was], therefore, already conversant with the issues of fact," where the case had no nexus with the District of Columbia, and where transfer minimized the possibility of inconsistent decisions and was in the interest of judicial economy); *Consolidated Metal Products, Inc. v. American Petroleum Institute*, 569 F. Supp. 773, 774 (D.D.C. 1983) (transferring antitrust case where "there [was] little in the record suggesting any connection with this forum"); *Cole v. Ford Motor Co.,* No. 84-1041, 1981 U.S. Dist. LEXIS 16931, *5 (D.D.C. Sept. 25, 1981) (Pratt, J.) (though "the two cases are not so related as to be subject to consolidation," allowing transfer of antitrust and securities case because "[t]ransfer of this case would nevertheless allow whatever expertise the court developed in that case to be efficiently applied in the other. . . . '[t]he circumstances are analogous to the transfer of a civil case to a forum in which there is an ongoing criminal proceeding; the cases cannot be consolidated, but efficiency and justice are well served by having both proceed in the same forum.'") (quoting *SEC v. Page Airways, Inc.*, 464 F. Supp. 461, 465 (D.D.C. 1979)).

jurisdictions ruling on the issue in the hope of creating a circuit split that will lead to Supreme Court review.

Moreover, the Commission misreads the transfer jurisprudence. To be sure, the FTC cites a few cases where transfer was denied despite some risk of inconsistent results. *See* FTC's Opp. at 9 n.10. But in each of those cases, either the risk was less compelling than here and/or other factors weighed against transfer.[5] Courts in this district and elsewhere considering Section 1404(a) transfer motions routinely give paramount importance to avoiding inconsistent judgments. *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 55 n.15 (D.D.C. 2000) (in patent, antitrust and defamation action, holding that "[l]itigation of related claims in the same tribunal is favored in order to avoid duplicative litigation, attendant unnecessary expense, loss of time to courts, witnesses and litigants, and inconsistent results.") (quotations omitted); *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 180 (D.D.C. 2007) ("In the overall public-interest calculation, the most significant factor weighing in favor of transferring this case is the presence of closely related litigation" in the transferee district.); *California Farm Bureau Fed'n v. Badgley*, No. 02-2328 (RCL), 2005 U.S. Dist. LEXIS 12861, at *7 (D.D.C. June 29, 2005) ("significant risk . . .

---

[5] *See AT&T Corp. v. PAB Inc.*, 935 F. Supp. 584, 591-93 (E.D. Pa. 1996) (plaintiff's suit suspended pending resolution of related FCC action that "present[ed] a substantial risk of inconsistent rulings" and contingent transfer motion denied where current forum was defendants' home jurisdiction and where related cases in other forum were not all pending before the same judge); *Combs v. Adkins & Adkins Coal Co., Inc.*, 597 F. Supp. 122, 125 (D.D.C. 1984) (transfer motion denied where earlier-filed suit and suit at issue concerned disputes with different entities); *Polychrome Corp. v. Minnesota Min. & Mfg. Co.*, 259 F. Supp. 330, 333-34 (S.D.N.Y. 1966) (declining to transfer because one action "cover[ed] a broader area" than the other, and convenience of the parties and witnesses did not favor transferee forum) (*see also* FTC's Opp. at 8 n.8, conceding that "cases were different"); *Star Lines, Ltd. v. Puerto Rico Maritime Shipping Authority*, 442 F. Supp. 1201, 1208 (S.D.N.Y. 1978) (denying motion to transfer where transferee district was no more convenient, where related case was filed three months after instant case and where the chosen forum had connections to the operative facts of the case); *SEC v. Hart*, No. 78-65, 1978 U.S. Dist. LEXIS 17506, at *4-5 (D.D.C. May 26, 1978) (denying transfer of SEC action where one related case was pending in bankruptcy court and the private cases shared only "some factual overlap" with the government cases).

[of] inconsistent orders subjecting [the defendant] to inconsistent obligations . . . weigh[s] heavily in favor of transfer."); *Upjohn Co. v. General Accident Ins. Co.*, 581 F. Supp. 432, 435 (D.D.C. 1984) ("Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pretrial proceedings and discovery and avoids duplicitous [sic] litigation and inconsistent results.") (quotations omitted); *Industria Prodotti Chimici*, No. 85-2632, 1985 WL 6274, at *2 ("[C]onsiderations of the minimization of the possibility of inconsistent adjudications, as well as judicial economy, militate in favor of transfer."); *United States v. Pacific Far East Lines, Inc.,* 1979 AMC 2749, 2753 (E.D. Va. 1979) ("There is a strong policy in favoring the litigation of substantially similar claims in the same tribunal in order that . . . inconsistent results can be avoided.") (quotations omitted); *FTC v. MacArthur*, 532 F.2d 1135, 1143 (7th Cir. 1976) (reversing partial transfer because it would create duplicative and possibly inconsistent rulings); *National Super Spuds, Inc. v. New York Mercantile Exchange*, 425 F. Supp. 665, 667 (S.D.N.Y. 1977) ("Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplicitous [sic] litigation and inconsistent results."); *see also* 17 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 111.13[1][o][i] (3d ed. 2007) ("The fact that a related action is pending in the proposed transferee district is an important consideration that can override plaintiff's choice of forum because transfer of the second action will promote judicial economy and avoid the possibility of inconsistent results.") (citing, *inter alia*, *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) ("[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.") (quotations omitted)).

The FTC also makes the perplexing observation that the risk of inconsistent judgments is "inherent" in the multidistrict litigation scheme because Section 1407 contemplates remand to the original districts for trial. FTC's Opp. at 9. That observation has no relevance here because Cephalon is not seeking transfer for pretrial purposes under Section 1407, but rather is seeking to transfer the case for all purposes under Section 1404(a).[6]

*Third*, the FTC does not seriously dispute that it sued here to further a broader strategic objective spurred by its lack of success to date, including attempts in the Second and Eleventh Circuits, in challenging so-called "reverse payment" Hatch-Waxman settlements. As explained previously, the Commission wants to maximize the number of jurisdictions issuing rulings on the lawfulness of such settlements in the hopes of creating a circuit split that would persuade the Supreme Court to grant review. See Def.'s Mem. at 12-13. The Commission glibly calls this cynical strategy "prosecutorial judgment." FTC's Opp. at 11.[7] Cephalon respectfully submits that such "judgment" should not be condoned when the result is to foment duplicative litigation in multiple fora involving the *same defendant* and the *same agreements*.

*Finally*, the FTC does not deny that numerous relevant witnesses reside in the Eastern District of Pennsylvania where Cephalon is headquartered, or challenge anything else in Mr.

---

[6] The argument about "inherent risks" under Section 1407 is further inapposite because, even under Section 1407, a single judge would make the preliminary legal rulings on the antitrust standards applicable to Hatch-Waxman settlements. If the Commission had its way, different judges would decide those issues.

[7] The FTC's assertion that it routinely sues in the District of Columbia when the impact of conduct is felt nationwide (FTC's Opp. at 11) is not persuasive given the Commission's tacit acknowledgment of its broader litigation strategy to create a circuit split on the question of Hatch-Waxman reverse payment settlements. In any event, the small proportional quantum of impact here does not establish a meaningful connection to the forum for venue purposes. *See CFTC v. Cromwell Fin. Servs., Inc.*, 2006 DNH 19 (D.N.H. 2006) (plaintiff's choice of forum given less deference where harm occurred nationwide and citizens of forum "comprise only a small percentage of those harmed by the defendants' allegedly fraudulent activity.")

Zakreski's Affidavit. Instead, the FTC constructs and attacks a straw man, suggesting that Cephalon argued that the convenience of witnesses alone requires transfer. FTC's Opp. at 12. (Cephalon only tried to satisfy its "burden" of showing entitlement to transfer "on the last page of its motion" and "almost as an afterthought"). The Commission mischaracterizes Cephalon's motion. Each point in its moving papers – the lack of deference accorded to a government agency's choice of forum (Def.'s Mem. at 8), the lack of connection to this forum (Def.'s Mem. at 9-10), the substantial similarity of the cases and the risk of inconsistent judgments (Def.'s Mem. at 12-13), and the location of witnesses (Def.'s Mem. at 14) – *all* address Cephalon's "burden." Each point addresses the lack of weight accorded the FTC's forum choice, or identifies an established public or private factor supporting transfer. The location of witnesses is just one of several such factors mentioned, all of which point to the Eastern District of Pennsylvania.

## II.     Section 1407(g) Does Not Support the Commission's Position That Transfer Would Violate Public Policy

Having essentially conceded the fundamental points raised by Cephalon, the Commission's principal ground for opposing transfer is the supposed public policy embodied in the multidistrict litigation statute, 28 U.S.C. §1407(g), against "combining" government antitrust enforcement actions with private antitrust suits. FTC's Opp. at 6-10. The Commission's argument is misplaced – this is a motion for transfer under §1404(a), not one seeking multidistrict status under §1407, and in any event, the concerns addressed by §1407(g) are not present here, even by analogy.

The exemption under Section 1407(g) on which the FTC relies applies to motions to transfer cases to the Judicial Panel for Multidistrict Litigation for pretrial consolidation or coordination, not to simple motions to transfer venue under Section 1404(a). *See United States*

*v. Dentsply International, Inc.*, 190 F.R.D. 140, 146 n.23 (D. Del. 1999) (rejecting argument that the "concern [of Section 1407(g)] was to protect the Government's choice of forum."). The FTC seeks to make Section 1407(g) relevant by accusing Cephalon of attempting to circumvent it by a "two-step process" of first transferring this case and then seeking to consolidate or coordinate it with the private cases. FTC's Opp. at 6-7. The Commission, citing *Dentsply*, says that this runs afoul of a supposed "public policy" embodied in Section 1407(g) to keep government and private antitrust suits completely separate. FTC's Opp. at 8-9.

The "two-step" contention is based solely on speculation about motions Cephalon may file in the future. Indeed, a key reason that Cephalon seeks transfer – to avoid the risk of conflicting legal rulings and judgments as to the lawfulness of the same settlements – does not require consolidation, or even coordination. If after transfer Cephalon moves to consolidate or seeks coordination, the Commission will have ample opportunity to raise any and all objections it may have with the transferee court. The present motion simply seeks to transfer the case to the appropriate forum, and does not present the issue raised by the Commission.

The Commission's argument based on analogy to Section 1407(g) also fails because the concerns underlying the statute are not present here, the Commission's protestations about delay are unfounded and pretextual, and the Commission's opposition to coordination is inconsistent with its recent advocacy in this District for coordination with direct and indirect purchaser class actions in cases arising from a branded-generic pharmaceutical agreement.

### A.   The Concerns Animating Section 1407(g) Are Not Present Here

The legislative history of Section 1407(g) makes clear that the concerns that led Congress to enact it are not applicable here. As noted in *Dentsply*, the Department of Justice requested the exemption in order to prevent private plaintiffs from "fil[ing] actions merely to ride along on the Government's cases. . . ." *Dentsply*, 190 F.R.D. at 144; H.R. Rep. No. 90-1130, at 5 (1968) *as*

*reprinted in* 1968 U.S.C.C.A.N. at 1902; *see also* H.R. 90-1130, at 8, *as reprinted in* 1968 U.S.C.C.A.N at 1905 (letter of Ramsey Clark, Deputy Attorney General incorporated into Report) (application of 1407(a) to Department of Justice antitrust suits would cause "numerous private plaintiffs [to] file treble damage suits immediately following the filing of a Government suit.")

The Department was concerned that such tag-along suits would "almost certainly cause delay" to its enforcement actions. *Dentsply*, 190 F.R.D. at 144; *citing* H.R. 90-1130, at 5, 8, *as reprinted in* 1968 U.S.C.C.A.N. at 1902, 1905. Here, the private plaintiffs clearly are not attempting to "ride along" on the government's case; the earliest private actions began nearly two years before the Commission filed suit and the private plaintiffs obviously have every intention of vigorously prosecuting their own cases.

Moreover, transfer will not delay this case to the public detriment.[8] The Commission claims that transfer inevitably will result in delay because the private plaintiffs are "far behind the FTC in trial preparation." FTC's Opp. at 4. But while the FTC has obtained documents through its investigation, the private suits are (not surprisingly, given that they were filed much earlier) ahead of the FTC action in other respects. For example, motions to dismiss based on controlling legal issues are fully briefed, whereas the briefing of Cephalon's motion to dismiss has not begun and will not be completed for months under the schedule already agreed to by the FTC. Moreover, the fact that the Commission has conducted an investigation has little bearing

---

[8] The Commission cites the *Lorazepam* antitrust litigation for the proposition that private antitrust suits take longer than agency enforcement actions. In particular, the Commission compares the time from filing of the complaint and "obtain[ing] injunctive and equitable relief" in the enforcement action, with the time from filing of the complaint to judgment in the private cases. FTC's Opp. at 5 n.3. The comparison is misleading, however, because the FTC enforcement action was resolved by agreement during the pendency of the litigation. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 373 (D.D.C. 2002) (approving settlement agreement between FTC and defendants).

on the ultimate timetable of this case unless the Commission intends to waive its rights to discovery under the Federal Rules. Presumably it does not, and will seek the full panoply of discovery that the private plaintiffs will seek if the cases are not resolved on motions to dismiss. And the Commission's myopic view overlooks the fact that Cephalon is entitled to take discovery, which has not begun in any action.

Even aside from its flawed premise that transfer equals delay, the Commission cannot fairly profess concern about delay being harmful to the public. First, the Provigil Settlements were filed with the FTC during the period December 8, 2005 and February 1, 2006, in accordance with Section 1112 of Subtitle B ("Federal Trade Commission Review") of Title XI of the Medicare Prescription Drug, Improvement and Modernization Act of 2003. P.L. 108-173, Title XI, Subtitle B, 117 Stat. 2461 (2003), codified at 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e). Belying its present claim of urgency, the Commission did not file suit until two years later, in February 2008. Second, no matter where this case proceeds, it will take a significant amount of time to resolve and the Commission itself has no expectation of a speedy resolution. Indeed, as one of the Commissioners himself noted when the FTC filed suit, "[this case] will likely take years, as most antitrust cases do." *Statement of Commissioner Jon Leibowitz Concurring in Part and Dissenting in Part in the Matter of Cephalon, Inc. Matter Number 061-0182*, at 3, *available at* http://www.ftc.gov/os/caselist/0610182/080213comment.pdf. Third, private plaintiffs seek treble damages on behalf of both direct and indirect purchasers of Provigil, so that if the settlements ultimately are found to be unlawful, consumers will receive damages in remediation of any improper pricing during the pendency of the litigation. Finally in this regard, any concern about delay – even if genuine – is premature and should have no bearing on whether to transfer this case. If and when Cephalon seeks consolidation or coordination after transfer, the

Commission would have ample opportunity to raise scheduling concerns or objections with the Eastern District of Pennsylvania court.

> **B.  The Commission's Position Understates The Efficiencies Resulting From Transfer, and Is Inconsistent With Its Position Calling for Coordination In a Substantially Similar Case**

The Commission further urges that absent consolidation or coordination, the judicial efficiencies that would result from transfer are "modest" and "unlikely to be significant." FTC's Opp. at 8. This argument is erroneous, and assumes its conclusion that consolidation or coordination necessarily would be improper. As demonstrated above, the analogy to Section 1407(g) and *Dentsply* (which, in any event, dealt only with a motion to consolidate under Rule 42(a) and not coordination) is flawed. Moreover, the Commission is wrong on the facts. It goes to great pains, including obtaining a Declaration from counsel for one of the plaintiff classes, (*see* Declaration of Barry S. Taus), to suggest differences between this case and the private suits.[9] To be sure, those cases involve some additional issues such as damages. But the FTC does not and cannot deny that all the cases challenge identical conduct, by the same defendant, on substantially the same legal theories, and therefore will involve substantially the same threshold legal questions, witnesses[10] and documents, not to mention the likelihood of overlapping discovery issues. Under these circumstances, it is impossible to plausibly deny the enormous efficiencies of having a single district judge oversee all the cases, even absent formal

---

[9] It is ironic that the FTC suggests that cooperation with the private plaintiffs somehow would impair its ability to prosecute this case, yet worked closely with counsel for one of the putative classes to obtain a Declaration.

[10] It is also ironic that the FTC attempts to distinguish the private suits on the basis that they also name the Generics as defendants, yet relies extensively on the likely testimony from the same Generics *in this case* in trying to downplay the importance of the location of witnesses in the Eastern District of Pennsylvania. *See* FTC's Opp. at 8, 13-14; Declaration of Saralisa C. Brau ¶¶ 12.

consolidation. *See, e.g., Cole*, No. 84-1041, 1981 U.S. Dist. LEXIS 16931, at *5 (noting that even though case could not be consolidated with related case pending in transferee forum, transfer "would nevertheless allow whatever expertise the court developed in that case to be efficiently applied in the other."); *S.E.C. v. Capt. Crab, Inc.*, 655 F.Supp. 615, 618-9 (S.D.N.Y., 1986) (even though government case not likely to be consolidated with related class actions in transferee forum, court transferred case because "[a]ssignment of all the actions to a single judge may . . . result in substantial saving of judicial effort and reduction of likelihood of inconsistent results since similar legal issues are likely to be raised by motion in the various cases."); 17 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 111.13[1][o][i] (3d ed. 2007) ("Judicial economy is served by having the two actions in the same district even though actual consolidation of the actions may not be possible; the litigation of related claims before the same judge may conserve judicial resources and avoid inconsistent rulings. In addition, having related litigation in the same district may allow pretrial discovery to be conducted more efficiently.") (citing, *inter alia*, *Fairfax Dental (Ireland) Ltd. v. S.J. Filhol Ltd.*, 645 F. Supp. 89, 92 n.2 (E.D.N.Y. 1986) ("There is no requirement . . . that consolidation be certain before this Court can consider the fact that a related action is pending in the proposed transferee court."); *FUL Inc. v. Unified School Dist. No. 204*, 839 F. Supp. 1307, 1313 (N.D. Ill. 1993) (to same effect).

The FTC's opposition to even the prospect of coordination here is further undercut by its advocacy in favor of coordination in the *Warner Chilcott* case in this District. *See* Pls.' Joint Motion to Coordinate Discovery at 1, *FTC v. Warner Chilcott Holdings, Ltd.,* No. 1:05-cv-2179-CKK (D.D.C. March 10, 2006). *Warner Chilcott* involved antitrust challenges to a branded-generic pharmaceutical agreement brought by the FTC and several states, as well as classes of direct and indirect purchasers. *See id*. Although it opposed full Rule 42(a) consolidation, the

FTC (indeed, the same FTC counsel as here) *moved* "for an order to coordinate the discovery in [the FTC and state] lawsuits with the discovery in seven lawsuits filed by private plaintiffs against Defendants." *Id.* at 1. Contrary to its position here, the FTC advised the court that it "appreciate[ed] how the complete lack of cooperation among the parties to the lawsuits might impose unnecessary and duplicative costs on the Court, third parties, and the litigants themselves." *Id.* at 6. Pl.s' Joint Memorandum in Support of Motion to Coordinate Discovery at 6, *FTC v. Warner Chilcott Holdings, Ltd.,* No. 1:05-cv-2179-CKK (March 10, 2006). The FTC agreed to, and the court (Kollar-Kotelly, J.) subsequently entered, an order coordinating discovery, and required the parties in the government actions to cooperate with the parties in the private actions "to promote efficiency and avoid duplication." Joint Motion for Case Management Order at 3, *FTC v. Warner Chilcott Holdings, Ltd.,* No. 1:05-cv-2179-CKK (April 14, 2006) (motion granted and proposed order adopted in minute order on April 25, 2006).

### III.   CONCLUSION

This case has no connection to this forum, and the FTC's strategic choice to sue here is not entitled to deference. The risk of inconsistent legal rulings and judgments involving the same agreements, the efficiencies of having a single judge oversee the various cases challenging those agreements, and the location of witnesses, all favor transfer to the Eastern District of Pennsylvania where the operative facts arose. The multidistrict litigation exemption for government antitrust actions does not apply to this transfer motion, nor could it even be said to apply by analogy because the concerns that led to its passage – private litigants tagging along on, and delaying, government enforcement actions – are not present here. Finally, to the extent the Commission has any concerns about scheduling, it can raise them in the Eastern District of

Pennsylvania after transfer. Accordingly, as set forth above and in Cephalon's original brief, this case should be transferred to the Eastern District of Pennsylvania.

                Respectfully, submitted,

                /s/ Andrew J. Ewalt
                _____
                Andrew J. Ewalt (DC Bar # 493433)
                Eric Mahr (DC Bar # 459350)
                Wilmer Cutler Pickering Hale and Dorr LLP
                1875 Pennsylvania Avenue, NW
                Washington, DC 20006
                (202) 663-6000
                (202) 663-6363 fax

                James C. Burling
                Wilmer Cutler Pickering Hale and Dorr LLP
                60 State Street
                Boston, MA 02109
                (617) 526-6000
                (617) 526-5000 fax

                Attorneys for CEPHALON, INC.

Dated: March 17, 2008